Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| DAIANIE PÉREZ QUINTANA<br><br>Apelante<br><br>v.<br><br>FÉLIX ALEXIS HERNÁNDEZ MUÑIZ<br><br>Apelado | TA2026AP00291 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso número: AG2021RF00697<br><br>Sobre: Alimentos |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de mayo de 2026.

Comparece la apelante, Daianie Pérez Quintana, mediante el recurso de epígrafe y nos solicita que revoquemos una *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, el 2 de febrero de 2026. Mediante esta, el foro primario acogió las recomendaciones consignadas por una Examinadora de Pensiones Alimentarias en un informe, en el que esta recomendó no conceder una pensión básica ajustada, así como tampoco la pensión suplementaria por vivienda solicitada por la apelante.

Por los fundamentos que se exponen a continuación, se confirma la *Resolución* apelada.[1]

## I

El 28 de septiembre de 2021, Daianie Pérez Quintana (Pérez Quintana o la apelante) presentó una *Demanda de Pensión*

---

[1] El Tribunal Supremo ha dispuesto que las determinaciones sobre pensiones alimentarias, ya sea de menores o de excónyuges, constituyen propiamente sentencias de las cuales se puede interponer un recurso de apelación, aunque el foro primario las haya adjudicado mediante resolución. Véase, *Figueroa v. Del Rosario*, 147 DPR 121 (1998).

*Alimentaria* en contra de Félix Alexis Hernández Muñiz (Hernández Muñiz o el apelado).[2] Esencialmente, Pérez Quintana alegó que Hernández Muñiz es el padre no custodio de una menor de edad que ambos procrearon y que, en ese momento, tenía siete (7) meses de edad. Así las cosas, y debido a que no había una pensión alimentaria establecida a favor de la menor, la apelante solicitó que el foro *a quo* estableciera, tanto una pensión alimentaria básica, como una pensión suplementaria.

El 20 de octubre de 2021, una Examinadora de Pensiones Alimentarias (EPA) llevó a cabo una vista para fijar pensión alimentaria provisional. Así, el día 28 del mismo mes y año, la EPA rindió un *Informe Especial y Recomendaciones de Pensión Alimentaria Provisional.*[3] En dicho informe, recomendó una pensión provisional de $440.77 mensuales, la cual constaba de $352.34 por concepto de pensión básica y $88.42 correspondientes a pensión suplementaria de vivienda. Además, recomendó el pago proporcional de ciertos gastos escolares y médicos no cubiertos.

Tras evaluar el informe especial de la EPA, el foro primario lo acogió y aprobó la pensión provisional recomendada, mediante una *Resolución,* que fue notificada el 22 de noviembre de 2021. En virtud de esta, el foro *a quo* también pautó una vista final de fijación de pensión alimentaria ante un EPA, la cual se llevaría a cabo el 31 de enero de 2022, mediante videoconferencia. Posteriormente, y debido a que aún no se había completado el proceso de descubrimiento de prueba, entre otras situaciones, el foro primario recalendarizó en varias ocasiones la vista final para la adjudicación de pensión.

Así las cosas, a la vista pautada para el 6 de octubre de 2022, comparecieron ambas partes, representadas por sus respectivos

---

[2] Entrada núm. 1 del caso núm. AG2021RF00697 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Entrada núm. 13 del caso núm. AG2021RF00697 del SUMAC.

abogados. En esa ocasión, le informaron al EPA a cargo, que existía una controversia en cuanto al porciento de tiempo que la menor pasaba con ambos, la cual debía ser resuelta previo a fijar una pensión alimentaria final. En consideración a esta, el foro primario pautó un nuevo señalamiento para el 22 de noviembre de 2022.[4]

Finalmente, el 22 de noviembre de 2022 se celebró la vista para la fijación de pensión alimentaria final. A base de la prueba presentada durante la vista, el EPA emitió un *Informe Especial y Recomendaciones de Pensión Alimentaria Final*.[5] En este, el EPA recomendó una pensión alimentaria final de $438.30, que se compone de $278.16 correspondientes a pensión alimentaria básica, $74.05 por concepto de pensión suplementaria de vivienda y $86.10 por gastos de cuido. Asimismo, recomendó ordenarle al apelado satisfacer $650.00, por concepto de honorarios de abogado. Tras evaluar el informe del EPA, el foro *a quo* lo acogió y aprobó la pensión final, mediante una *Resolución*, que fue notificada el 30 de noviembre de 2022.[6]

Cabe destacar que, el 29 de noviembre de 2022, Hernández Muñiz había presentado una *Moción en Solicitud de Ajuste de Pensión Alimentaria*.[7] Esencialmente, informó que, en un caso paralelo,[8] el 20 de octubre de 2022, el foro primario emitió una *Sentencia*, en la que estableció un plan de relaciones paternofiliales.[9] Mediante la referida moción, el apelado adujo que, en virtud del referido plan trazado, se cumplían los requisitos del Artículo 19 del Reglamento Núm. 9535 de 15 de febrero de 2024, sobre ajuste a la pensión alimentaria básica.[10]

---

[4] Entradas núm. 46 y 50 del caso núm. AG2021RF00697 del SUMAC.
[5] Entrada núm. 55 del caso núm. AG2021RF00697 del SUMAC.
[6] Entrada núm. 58 del caso núm. AG2021RF00697 del SUMAC.
[7] Entrada núm. 56 del caso núm. AG2021RF00697 del SUMAC.
[8] Véase caso núm. AG2022RF00456.
[9] Entrada núm. 9 del caso núm. AG2022RF00456 del SUMAC.
[10] A este reglamento se le conoce como las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico*.

Luego de que el foro *a quo* emitiera en el caso de epígrafe la *Resolución* notificada el 30 de noviembre de 2022, el 5 de diciembre de 2022, Hernández Muñiz presentó una *Moción Informativa y en Cumplimiento de Orden*.[11] Esencialmente, reiteró su solicitud a los efectos de que, conforme al plan de relaciones filiales, tiene derecho a un ajuste en el cómputo de la pensión básica.

Tras considerar la solicitud de ajuste de pensión instada por el apelado, el 5 de diciembre de 2022, el EPA rindió un *Informe Especial y Recomendación de Ajuste de Pensión Alimentaria Básica*, que notificó al día siguiente.[12] En síntesis, tras considerar que el foro primario había determinado en el caso paralelo que el apelado permanece con la menor aproximadamente 3,618 horas anuales o el 41% del tiempo, el EPA recomendó ajustar el cómputo de la pensión básica a $163.27, aplicable a partir de noviembre de 2022. De este modo, el monto total de la pensión que le correspondía pagar al apelado disminuyó a $323.42 mensuales. El foro primario acogió el referido informe mediante una *Sentencia* emitida y notificada el 7 de diciembre de 2022.[13]

Así las cosas, hay que destacar que, el 2 de mayo de 2025, el foro primario emitió y notificó una *Resolución* en el caso paralelo.[14] Mediante esta, fijó custodia compartida, a razón de un plan concreto de relaciones filiales que, si bien es detallado, no calcula, ni totaliza la cantidad de horas o el porciento de tiempo que cada progenitor pasaría al cuidado de la menor.

Posteriormente, el 31 de julio de 2025, la apelante instó por derecho propio una *Moción sobre Revisión de Alimentos*.[15] Como fundamento, alegó un cambio sustancial de circunstancias, por motivo de encontrarse desempleada.

---

[11] Entrada núm. 59 del caso núm. AG2021RF00697 del SUMAC.
[12] Entrada núm. 60 del caso núm. AG2021RF00697 del SUMAC.
[13] Entrada núm. 62 del caso núm. AG2021RF00697 del SUMAC.
[14] Entrada núm. 79 del caso núm. AG2022RF00456 del SUMAC.
[15] Entrada núm. 82 del caso núm. AG2021RF00697 del SUMAC.

En consideración a la solicitud de revisión de pensión instada por Pérez Quintana, el 12 de enero de 2026, una EPA celebró una vista. Tras evaluar la prueba, el 29 de enero de 2026, rindió un nuevo *Informe Especial y Recomendaciones de Pensión Alimentaria Final*, el cual fue notificado al día siguiente.[16]

En esencia, tomó conocimiento judicial de la *Resolución* emitida y notificada por el foro *a quo* el 2 de mayo de 2025 en el caso paralelo sobre custodia compartida. Sin embargo, a pesar de que el referido dictamen no refleja el cálculo de la cantidad de horas o del porciento de tiempo que cada progenitor pasa con la menor, concluyó que las partes ostentan custodia compartida de la menor, a razón de 50%. Basado en lo anterior, recomendó eliminar la partida correspondiente a pensión básica, del monto de pensión alimentaria que le corresponde pasar a Hernández Muñiz.

Por su parte, el foro primario acogió el informe especial y sus recomendaciones, mediante una *Resolución*, que fue emitida y notificada el 2 de febrero de 2026, por lo que eliminó la partida de la pensión básica.[17] Asimismo, le ordenó al apelado pagar el balance adeudado por concepto de la mensualidad de agosto de 2025 a enero de 2025, ascendente a $729.00.

En desacuerdo, el 15 de febrero de 2026, Hernández Muñiz solicitó reconsideración con respecto a la mencionada cuantía de $729.00, ya que aseguró no adeudarla.[18] Por su parte, el 17 de febrero de 2025, Pérez Quintana también solicitó reconsideración.[19] Esencialmente, alegó que el tiempo que la menor pasa con cada progenitor, de conformidad con el plan de relaciones filiales, no equivale al 50%. Por el contrario, expuso que el tiempo del año que el apelado está a cargo de la menor fluctúa entre el 41% y el 44%.

---

[16] Entrada núm. 124 del caso núm. AG2021RF00697 del SUMAC.
[17] Entrada núm. 125 del caso núm. AG2021RF00697 del SUMAC.
[18] Entrada núm. 126 del caso núm. AG2021RF00697 del SUMAC.
[19] Entrada núm. 128 del caso núm. AG2021RF00697 del SUMAC.

Tras evaluar ambas mociones de reconsideración, la EPA a cargo rindió un Informe en el que recomendó declarar Ha Lugar la solicitud del apelado y No Ha Lugar la instada por la apelante.[20] Por su parte, el foro *a quo* acogió la recomendación de la EPA, mediante una *Resolución* emitida y notificada el 19 de febrero de 2026.[21] En cuanto a la solicitud de reconsideración instada por Hernández Muñiz, dispuso lo siguiente: "En cuanto a la deuda por concepto de retroactividad, se da por satisfecha ya que el señor Hernández se encontraba al día con la pensión alimentaria fijada previamente".

Todavía inconforme, el 20 de marzo de 2026, Pérez Quintana acudió ante este Foro mediante el recurso de epígrafe y adujo que el foro *a quo* cometió los siguientes errores:

> Erró el Tribunal de Primera Instancia al no conceder a la menor alimentista una pensión alimentaria básica según el Artículo 16 del Reglamento Núm. 9535, a pesar de que el plan de relaciones paternofiliales demuestra que la menor pasa con el padre menos de 50% del tiempo.

> Erró el Tribunal de Primera Instancia al no conceder una pensión suplementaria por concepto de vivienda a favor de la menor, a pesar de que la prueba establecía gastos por concepto de hipoteca de la residencia donde esta vive y contaba con los datos necesarios para computarlo conforme al Reglamento Núm. 9535.

> Erró el Tribunal de Primera Instancia al no conceder una pensión alimentaria tomando en consideración que las circunstancias de la madre de la menor cambiaron sustancialmente al quedar desempleada.

> Erró el Tribunal de Primera Instancia al no conceder honorarios de abogado a la parte demandante, quien compareció en representación de la menor en un procedimiento de alimentos, a pesar de haberlos solicitado y de existir base jurídica para su concesión.

Tras una evaluación preliminar del recurso, le ordenamos al apelado presentar su alegato, en el término de treinta (30) días dispuesto en la Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22.[22] Por su parte, el 20 de abril de 2026, la representación legal del apelado instó una *Moción*

---

[20] Entrada núm. 131 del caso núm. AG2021RF00697 del SUMAC.
[21] Entrada núm. 132 del caso núm. AG2021RF00697 del SUMAC.
[22] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 38-39, 215 DPR ___ (2025).

*asumiendo representación legal y solicitud de prórroga.* Mediante esta, expuso que el apelado recién le había contratado y que requería acceso al expediente confidencial del caso, a los fines de preparar adecuadamente la comparecencia ordenada por este Foro. A tales fines, solicitó una prórroga de quince (15) días.

Luego de evaluar la solicitud del apelado, el 21 de abril de 2026 emitimos y notificamos una *Resolución*. En esta ocasión, declaramos Ha Lugar la representación legal y le concedimos hasta el 4 de mayo de 2026 para presentarnos su comparecencia.

En cumplimiento de nuestra orden, el 2 de mayo de 2026, el apelado presentó un *Alegato en oposición*. Esencialmente, adujo que la EPA a cargo de emitir el informe en el caso de epígrafe tomó conocimiento judicial de la determinación sobre custodia compartida en el caso paralelo, la cual no fue objeto de revisión. Argumentó que, mediante el recurso ante nos, la apelante procura pedir revisión sobre asuntos de custodia que ya son finales y firmes. En consecuencia, adujo que el foro *a quo* carece de jurisdicción en el caso de epígrafe, que versa sobre alimentos, para intervenir con la *Resolución* emitida el 2 de mayo de 2025 en el caso paralelo.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

## II

### A

Sabido es que la obligación de los padres y madres de alimentar a sus hijos e hijas menores de edad es parte del derecho a la vida consagrado en la Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo I. *Ríos Figueroa v. López Maisonet,* res. 25 de agosto de 2025, 2025 TSPR 86. Por tal razón, los casos de alimentos de menores están revestidos del más alto interés público, siendo el interés principal el bienestar de estos. *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022); *Díaz*

*Ramos v. Matta Irizarry*, 198 DPR 916, 927 (2017); *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016). Esta obligación emana de la relación filial y se origina desde el momento en que la paternidad o maternidad queda legalmente establecida. *Íd.*; *Fonseca Zayas v. Rodríguez Meléndez,* 180 DPR 623, 632-633 (2011). En nuestro ordenamiento jurídico, se entiende por alimentos, todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia. Artículo 653 del Código Civil, 31 LPRA sec. 7531.

Conforme a lo anterior, la Asamblea Legislativa ha legislado para procurar que los padres, madres o personas legalmente responsables contribuyan a la manutención y bienestar de sus hijos, hijas o dependientes. Ello, mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación, así como la distribución de las pensiones alimentarias. *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 712 (2014); 8 LPRA sec. 502. A tales fines, la Exposición de Motivos de la *Ley Orgánica de la Administración para el Sustento de Menores,* Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 *et seq.*, promueve como política pública del Estado Libre Asociado de Puerto Rico que, los padres, madres o personas legalmente obligadas asuman la responsabilidad que tienen para con sus hijos e hijas.

Así, una vez fijada una pensión alimentaria, siempre estará sujeta a revisión y puede modificarse ante un cambio sustancial en las circunstancias personales del alimentante o del alimentista. Así, pues, salvo circunstancias extraordinarias, tal revisión podrá darse en un plazo de tres (3) años, desde la última fijación. Art. 19(c) de la Ley Núm. 5, 8 LPRA sec. 518(c); *Figueroa v. Del Rosario,* 147 DPR 121, 128 (1998).

**B**

Actualmente, el concepto de custodia compartida se encuentra codificado en la Ley Núm. 55-2020, según enmendada, conocida como *Código Civil de Puerto Rico de 2020*. En lo pertinente, el Artículo 602 establece lo siguiente:

> Custodia compartida es la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose con estos el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable.

> La custodia compartida no requiere que un menor pernocte el mismo tiempo en la residencia de ambos progenitores. En este caso, el tribunal puede conceder la custodia compartida de los hijos menores de edad o de hijos mayores de edad de los que comparten la patria potestad prorrogada, si el otro progenitor se relaciona de forma amplia y desempeña responsablemente todas las funciones que como progenitor le corresponden y la patria potestad le impone.

31 LPRA sec. 7281. Véase, además, *Jusino González v. Norat Santiago*, 211 DPR 855, 863-864 (2023).

Sin embargo, desde hace décadas, el Tribunal Supremo ya reconocía la custodia compartida como "un instrumento positivo y una solución adicional que los tribunales poseen en el delicado descargo de sus funciones de *parens patriae*, para enfrentar el serio problema de las relaciones entre padres e hijos ante la ruptura del vínculo matrimonial". *Ex parte Torres*, 118 DPR 469, 483 (1987).

La adjudicación de pensión alimentaria se rige por el Reglamento Núm. 9535 de 15 de febrero de 2024, conocido como *Guías mandatorias para fijar pensiones alimentarias en Puerto Rico*. En cuanto a los casos en que hay custodia compartida a razón del 50%, el Artículo 18 dispone lo siguiente:

> 1. Al momento de determinar una pensión alimentaria al amparo del presente artículo, el juzgador se asegurará de que se cumplen todos y cada uno de los siguientes requisitos:

> a) ambas personas ostentan la custodia compartida del alimentista por orden del Tribunal, y;

> b) ambas personas custodias están de acuerdo en que cada una de ellas:

>> 1) pasan el cincuenta por ciento (50%) de su tiempo con el alimentista y comparten la responsabilidad y

participación en la educación del alimentista/ de llevarlo a sus citas médicas y de compartir con él durante actos culturales, deportivos y de entretenimiento,

2) cuenta con un espacio de vivienda determinado para el alimentista que es aceptable para el menor, y comparten la responsabilidad de brindarle afecto al alimentista, de proveerle un clima de respeto y de garantizarle su seguridad física, emocional, intelectual y social.

2. En los casos en los que ambas personas ostenten la custodia compartida por orden del Tribunal, pero en los que, en efecto, no se cumplen con los criterios establecidos en el inciso 1(b) de este Artículo; la pensión se establecerá de conformidad con lo determinado en la Parte III de este Reglamento.

3. Para fines del cálculo de la pensión alimentaria al amparo de la Parte III de este Reglamento, se considerará como persona no custodia a aquella persona custodia que no cumple con los requisitos establecidos en el inciso (b)(1) de este Artículo. En dichos casos, y siempre que la persona custodia se relacione con el alimentista entre el veinte por ciento (20%) y el cuarenta y nueve por ciento (49%) del tiempo, la pensión alimentaria básica se ajustará de conformidad con lo establecido en el Artículo 16 de este Reglamento.

De otra parte, el Artículo 16 del Reglamento Núm. 9535 codifica lo relacionado con el ajuste a la pensión alimentaria básica, en aquellos casos en que proceda. En lo pertinente, el referido artículo dispone lo siguiente:

1. Cuando el alimentista pase el veinte por ciento (20%) o más del tiempo con la persona no custodia, esta última podrá solicitar, y el juzgador ordenará, que se ajuste la pensión alimentaria básica si cumple con uno de los siguientes requisitos:

a. exista un plan de relaciones paterno o materno filiales fijado por el Tribunal al amparo del cual se pueda computar la parte del tiempo que un alimentista pasa o pasará con la persona no custodia; o

[...]

1. En aquellos casos en los que la persona no custodia solicite un ajuste a la pensión alimentaria básica, el juzgador seguirá los pasos siguientes:

a. Calculará el porciento de tiempo que el alimentista anualmente pasa o pasará con la persona no custodia. Para ello, se suman las horas que el alimentista pasa o pasará anualmente con la persona no custodia a la luz del plan de relaciones paterno o materno filiales fijados por el tribunal o estipulado por las partes. El total de horas se divide entre el número de horas que tiene el año, es decir, 8,760 horas. El resultado de dicha división es el por ciento que el alimentista pasa anualmente con la persona no custodia.

b. Calculará el ajuste: Cuando se determine que el alimentista pasa o pasará el veinte por ciento (20%) o más del tiempo con la persona no custodia, el juzgador calculará el ajuste que se aplicará a la pensión alimentaria básica del alimentista. Cuando se esté estableciendo la pensión alimentaria para dos o más alimentistas, el juzgador debe determinar el tiempo que cada menor pasa o pasará con la persona no custodia y calcular el ajuste para cada uno de ellos. El juzgador calculará el ajuste con la fórmula siguiente:

$$1 - (\% \text{ tiempo}) = \text{AJUSTE}$$

c. Ajustará la pensión alimentaria básica que le corresponda al alimentista que, en efecto, pasa o pasará entre el veinte por ciento (20%) al cuarenta y nueve por ciento (49%) del tiempo con la persona no custodia. Para determinar la pensión alimentaria básica ajustada, el juzgador multiplicará la pensión alimentaria computada según lo dispuesto en el Artículo 16 de este Reglamento, para el alimentista que pasa o pasará entre el veinte por ciento (20%) al cuarenta y nueve por ciento (49%) del tiempo con la persona no custodia por el ajuste determinado según el subinciso anterior. Para ello se utiliza la fórmula siguiente: (Pensión alimentaria básica) x (ajuste)= Pensión alimentaria básica ajustada.

En cuanto al cálculo de la pensión suplementaria, el Artículo 19(2) del Reglamento Núm. 9535 dispone que "[p]ara el cálculo de la pensión alimentaria suplementaria en una custodia compartida al 50%, tanto la persona custodia como la persona no custodia se consideran personas custodias". Asimismo, en el Artículo 19(2)(a) se dispone que, en estos casos, corresponde exceptuar el gasto de vivienda del cálculo de la pensión alimentaria suplementaria. Sin embargo, en el contexto particular de la pensión suplementaria, nada se dispone sobre exceptuar el gasto de vivienda en los casos en que la proporción de la custodia compartida no sea a razón de partes iguales.

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

**III**

A continuación, procedemos a la discusión conjunta de los primeros tres señalamientos de error formulados por Pérez Quintana, debido a que se encuentran estrechamente relacionados. Mediante estos, la apelante argumenta que el foro *a quo* erró al no conceder a la menor alimentista una pensión alimentaria básica, de

conformidad con el Artículo 16 del Reglamento Núm. 9535. Ello, a pesar de que el plan de relaciones paternofiliales demuestra que la menor pasa con el padre menos del 50% del tiempo del año. Asimismo, aduce que dicho foro incidió al no conceder una pensión suplementaria por concepto de vivienda, a favor de la menor; principalmente, en consideración a que las circunstancias de la apelante cambiaron sustancialmente, al quedar desempleada. Como veremos a continuación, no tiene razón.

Comenzamos por reseñar que, en el dictamen apelado, el foro primario expresó que acogía el *Informe Especial y Recomendaciones* rendido por la EPA a cargo, luego de la vista llevada a cabo el 12 de enero de 2026. En el mencionado informe, la EPA había consignado como determinación de hecho número 2, lo siguiente:

> […]
>
> 2. Las partes ostentan la custodia compartida al 50%. Se toma conocimiento judicial de la Resolución emitida por la Honorable Sandra I. Segarra Vázquez el 2 de mayo de 2025.
>
> a. Conforme a esta Resolución la menor pernocta de martes a miércoles, de jueves a viernes y de jueves a lunes en semanas alternas con el Sr. Hernández. Conforme a este plan, la menor pernocta 5 días a la semana y dos días a la semana, ello significa igualdad de tiempo con cada padre.[23]

Basado en que acogió el razonamiento de la EPA a los fines de considerar que las partes ostentan custodia compartida a razón del 50%, en la *Resolución* recurrida, el foro primario concluyó que no procedía fijar pensión alimentaria básica. Por encontrarse en desacuerdo, Pérez Quintana solicitó reconsideración. Como parte de lo argumentado en dicha moción, expuso que no procedía eliminar la pensión alimentaria básica, debido a que la proporción de tiempo que la menor permanece con ambos no es de 50%, sino que Hernández Muñiz pasa con la menor aproximadamente entre el 41%

---

[23] *Informe Especial y Recomendaciones*, pág. 1. Entrada núm. 124 del caso núm. AG2021RF00697 del SUMAC.

y el 44% del tiempo del año. Como anejo, adjuntó una tabla en la que detalló la cantidad de horas del año que la menor pasa con el apelado.

Somos conscientes de que, en la *Resolución* sobre adjudicación de custodia compartida emitida el 2 de mayo de 2025 en el caso paralelo, el foro *a quo* no detalló la proporción de tiempo que la menor pasaría con la apelante y el apelado, respectivamente. Más bien, dispuso que la custodia sería compartida, a base de un plan concreto de relaciones filiales, que detalló en la propia *Resolución*, sin adjudicarle equivalencia porcentual. Al tomar conocimiento judicial de dicha *Resolución* y evaluar el plan de relaciones filiales, el foro *a quo* interpretó que la equivalencia es de 50%. El referido ejercicio discrecional merece nuestra deferencia, por lo que no estamos en posición de variarlo.

Es preciso subrayar también que, como foro revisor, no estamos en posición de pasar juicio sobre el cómputo de horas que, según alega la apelante, Hernández Muñiz pasa con la menor, así como su correspondiente equivalencia porcentual. En ese sentido, tal y como señala el apelado en su *Alegato en oposición*, la adjudicación sobre custodia compartida en el caso paralelo goza de finalidad, en la medida que no fue objeto de un recurso de apelación oportuno.

De este modo, somos del criterio que la apelante se encuentra impedida de procurar revisar, en virtud del presente recurso, asuntos de custodia que son finales y firmes. Así, en consideración al hecho de que el caso de epígrafe versa únicamente sobre imposición de pensión alimentaria, el foro *a quo* se encontraba impedido de intervenir con la *Resolución* emitida el 2 de mayo de 2025 en el caso paralelo. Por tanto, actuó correctamente al limitarse a tomar conocimiento judicial al referido dictamen y proceder a

aplicar el Reglamento Núm. 9535, en lo pertinente a la imposición de custodia compartida a razón del 50%.

En virtud de lo anterior, es forzoso concluir que actuó correctamente el foro *a quo*, tanto al prescindir de la partida por concepto de pensión alimentaria básica, como al calcular la pensión suplementaria correspondiente a casos en que ambos progenitores ejerzan la custodia compartida al 50%. Por tanto, procede confirmar el dictamen apelado.

Por último, mediante el cuarto señalamiento de error formulado, Pérez Quintana expuso que el foro primario incidió al no conceder honorarios de abogado a su favor, como parte demandante. Expresó que compareció a un procedimiento de alimentos en representación de la menor y que, al existir base jurídica para su concesión, tiene derecho a que se le adjudique esta partida. No tiene razón.

Como fundamento a lo expuesto en este señalamiento de error, la apelante aludió a lo dispuesto en el Artículo 22 de la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada,[24] sobre honorarios de abogado. En lo pertinente, la mencionada disposición establece lo siguiente:

> (1) En cualquier procedimiento bajo esta Ley para la fijación, modificación o para hacer efectiva una orden de pensión alimentaria, **el tribunal**, o el Juez Administrativo **deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando éste prevalezca**.
>
> [...]

8 LPRA sec. 521. (Negrillas suplidas).

Esencialmente, Pérez Quintana razona que procedía la imposición de los honorarios de abogado a su favor, debido a que, en este caso, no existe una distribución real de custodia de 50% y 50%. Según afirma, "el padre comparte con la menor aproximadamente 42.18% del tiempo anual, o en todo caso entre

---

[24] Conocida como *Ley Orgánica de la Administración para el Sustento de Menores*.

42% y 44%". Sin embargo, reiteramos que la actuación objeto de nuestra revisión fue correcta en derecho, por lo que no procede hablar de imposición alguna de honorarios de abogado, conforme la Ley Núm. 5, *supra.*

### IV

Por los fundamentos que anteceden, se confirma la *Resolución* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones